# Daniel D. Stone v. William P. Palmer, Assignee, etc.

1. CONTRACTS—*Must be Enforced as Made.*—A contract must be carried out according to its terms, and equity can not create a contract different from the one agreed upon, although there may seem to be a moral justice in doing so.

2. MORTGAGES—*Must Secure a Particular Debt.*—A mortgage given to secure a particular debt, either present or prospective, can not be enforced as security for another and different debt.

3. SAME—*Without Consideration.*—A mortgage made without consideration, and under a promise never performed, is void for all purposes as against the mortgagor, whether in the hands of the mortgagee or of a third person who has taken it as security without notice of the want of consideration.

4. VOLUNTARY ASSIGNMENTS—*Effect of Notice of.*—After a creditor of an insolvent debtor has notice that such insolvent is about to make a general assignment under the statute for the benefit of creditors, he can not receive security for his debt.

BILL, for foreclosure. Appeal from the Circuit Court of Whiteside County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

C. L. SHELDON, attorney for appellant.

J. E. McPHERRAN, attorney for appellee.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a bill for relief filed by the appellee as assignee of Adam Horlacker, in the Circuit Court September 7, 1894, against appellant, praying the cancellation of a certain mortgage given by said Horlacker to the latter on the alleged grounds that the note and mortgage given to secure it were without consideration and void as to the creditors of Horlacker, and praying to have it canceled and removed as a cloud.

Appellant answered, denying the allegations of the bill, and then filed a cross-bill, making appellee and Horlacker and wife respondents, asking for a foreclosure of the mortgage. To the cross-bill appellee filed an answer denying

there was a consideration for the note and mortgage or any delivery of the note and mortgage to appellant.

On hearing of original and cross-bill and answers thereto, the court, after finding the issues in favor of appellee, dismissed the cross-bill and granted the relief prayed for in the original bill, and canceled said mortgage and removed it as a cloud on the title to the real estate described in the bill, and ordered that the land of Horlacker described in the bill be discharged from the lien of said mortgage, and decreed the costs of the proceedings against appellant.

From this decree this appeal is taken.

It appears from the evidence in the case that Adam Horlacker was engaged in the banking business in the city of Rock Falls, Whiteside county, Illinois, in July, 1894, and made an assignment in that month for the benefit of creditors.

The appellant was a depositor in his bank to the amount of $4,792. On July 30, 1894, Adam Horlacker made and delivered his deed of assignment for the benefit of his creditors to appellee, W. P. Palmer, which deed was duly recorded July 31, 1894, at seven o'clock in the morning, and Palmer, assignee, assumed the execution of the trust in the said deed contained.

On the day prior to the execution of the mortgage and assignment, appellee drew $1,500 of his money out of the bank and the bank was unable to pay the balance.

On July 30, 1894, Horlacker and his wife, Mary, executed a mortgage to appellant on all the real estate mentioned in the deed of assignment to secure the payment of his note bearing date July 30, 1894 for $3,000, due in sixty days, payable to the appellant, with the following provisions incorporated in the note: " this note being given to secure said Stone, as my surety in signing a note with me for said sum of money, and this note to remain as security for any renewals or extensions of the said surety note or any part thereof." This mortgage was filed for record at five o'clock in the afternoon of July 31, 1894.

It was a disputed point and the evidence was conflicting

as to whether there was any legal delivery of the note and mortgage by Horlacker to appellant.

There are two points in this case urged on the part of the appellee : first, that there was no consideration for the note and mortgage; that both had been executed upon terms and conditions which appellant had not complied with; second, that the note and mortgage had never been legally delivered to appellant and therefore the recording of the mortgage was a violation of the rights of Horlacker and the appellees.

It is claimed by the appellant that the note and mortgage was executed to him in consideration that he should sign a note with Horlacker as security to some Sterling bank for $3,000, which, when obtained by Horlacker, the latter was to turn over to appellant in payment of so much of his remaining deposit.

On the other hand the evidence of appellee tended to show that the appellant was only to become security for Horlacker to a Sterling bank for $1,500, and that there was no agreement to pay even that amount to Stone in part discharge of his deposit account. The evidence is also conflicting as to whether the note and mortgage in question was delivered to appellant or whether it was left in the hands of J. W. White, a lawyer, until appellant should carry out his part of the agreement to sign the note, a note of Horlacker to be given to the Sterling bank on which to raise the $3,000.

There is no dispute, however, that the note on which appellant was to become security for Horlacker was never signed and Horlacker never raised the money on such note. The fault for not signing this note is attributed to appellant by Horlacker on the one hand and to Horlacker by appellant on the other.

On this point the evidence is also conflicting.

In the view we take of the case it will not be necessary for us to canvass the conflicting evidence on these points, nor to decide where the preponderance lies, for we are of the opinion that the consideration for the note and mortgage, even if delivered by Horlacker to appellant, has failed

Stone v. Palmer.

because the consideration on which they are executed never passed between appellant and Horlacker.

It was a contract between appellant and Horlacker to raise money for Horlacker by means of appellant's suretyship, and not a mortgage to secure the deposit account of appellant even though the deposit was to be satisfied out of the sum borrowed.

We think a contract must be carried out according to its terms, and that equity can not create a contract between parties different from the one agreed upon, although there would seem to be a moral justice in doing so.

The contract in question not only contemplated the giving of the note and mortgage, but the execution of a note by appellant as surety for Horlacker.

If Horlacker, any time before the execution of the note, refused to go on and carry out the agreement, the mortgage and the note would be without consideration, because appellant could never be called on to pay a note which he had never signed, and would therefore never have to pay the money which the mortgage was intended to secure, therefore it was without consideration.

It would be like a mortgage given to a party to secure him for lending his credit; if no advances are made upon it and no credit is given, it is without consideration.

If given for that purpose it can not be enforced for a different purpose.

The sum named in the mortgage is of no importance when, in terms, the mortgage secures future advances. It is security for the advances and nothing further. It is valid to the extent of the advances made, although the mortgagor be insolvent at the time. Sections 611, 612, Vol. 1, Jones on Mortgages. And further, "a mortgage made without consideration and under a promise never performed is void for all purposes as against the mortgagor, whether in the hands of the mortgagee or of a third person who has taken it as security without notice of the want of consideration." Sec. 1470, Vol. 2, Jones on Mortgages.

" On the foreclosure of a mortgage given to secure the

payment of judgments confessed by the mortgagor but which were void for want of compliance with the statute, the defense may be taken that no indebtedness is shown and the bill should be dismissed." Sec. 1490, Vol. 2, Jones on Mortgages.

Appellant's counsel bases his claim of the validity of the mortgage upon a supposed equity, and as to what the condition of the parties would have been had the security note been given to the Sterling bank by Horlacker and the appellant. He says, "had the note been given and Stone paid it, as he would have done in default of Horlacker, Stone would have had the right to foreclose the mortgage to indemnify himself;" that is, appellant would have been subrogated to the mortgagee's rights.

The trouble with this argument is that the appellant never went so far as to sign the security note, although he may have been willing so to do had he the opportunity; therefore he never could have been damnified or required to pay a claim which he was secured against by the mortgage. Before he had opportunity to sign the security note he was notified by Horlacker that the assignment had been executed and then it was too late for him to secure his claim even by a direct mortgage by Horlacker to him, if Horlacker had been willing to have given appellant a mortgage to have secured his deposit account.

After a creditor of an insolvent debtor has notice that an insolvent is about to make a general assignment under the statute for the benefit of creditors, he has no power to receive any security for his debt from the insolvent debtor giving him a preference over the general creditors. He has a right to receive security for his debt if it is done in good faith and he secures his lien prior to the assignment or notice of the intention by the debtor to make an assignment.

" If a creditor, by attachment or otherwise, secures a lien upon the property prior to the time that it passes into the hands of the insolvent's assignee, then the said lien would be declared prior—practically, a preferred lien; but when an assignment becomes operative before any such lien is per-

fected then those seeking to parcel out the estate of the insolvent in their own interest will either come in under the assignment or be declared non-participants in the avails of the sale of property." Yates v. Dodge, 123 Ill. 50.

The policy of our insolvent debtor's statute is to effectuate an equal distribution among all the creditors of an insolvent's property, hence the law will not recognize any liens acquired prior to the assignment unless actual and perfected liens.

It is insisted by appellant's counsel that equity would have required Horlacker to have gone on and borrowed the money and given appellant the opportunity to have signed the note contemplated so that appellant might have been preferred against the other creditors of the insolvent.

As we understand the law, it would not have been equity, in view of the insolvent debtor's act, and Horlacker's determination to make an assignment for the benefit of his creditors, for him to have given preference to appellant, and he might recede from any agreement to do so at any time after he had concluded to make an assignment, and no rule of law or equity could prevent him.

Appellant could not even accept a preference with the knowledge of the debtor's intention to make an assignment, no difference how near he had come to securing a preference before such knowledge came to him. No rule of equity is, therefore, violated in setting aside this mortgage in question, given without consideration and after the assignment, without power to receive any.

The appellant will stand on the same footing with all other creditors and receive his *pro rata* share.

Seeing no error in the record the decree of the court below is affirmed.